JOHN A. McILHARGY, AS ASSIGNEE OF CONRAD W. WENNBERG, FOR THE BENEFIT OF CREDITORS, PLAINTIFF, RESPONDENT, *v.* JAMES CHAMBERS AND OTHERS, DEFENDANTS, APPELLANTS.

*Assignment for creditors — attempt to hold it, after execution, until the assignor's ability to continue business can be determined, renders it void.*

A general assignment for the benefit of creditors was signed and acknowledged by the assignee therein named, on the 24th day of June, 1886, and, afterwards, on the same day, was executed by the assignor and duly acknowledged by him, with the intention that if the debtor should find himself unable to continue business, then the assignment should be delivered to the assignee and go into effect.

The assignment was left with the attorney of the assignee, and subsequently the assignor went to the attorney and received from him the assignment, and delivered it to him again as agent for the assignee.

*Held,* that, under the statute relating to general assignments, this instrument was not executed as required by the statute.

*Semble,* That the signing of the assignment by the assignee before it was executed by the assignor was improper. ·

That when an assignment is executed by both of the parties it is a complete instrument and requires no further action to become operative; that the attempt of the attorney to hold the assignment, and his subsequent acceptance of it for the assignee, constituted an attempt to circumvent the provisions of the statute and was a fraud upon the creditors of the assignor.

MOTION, on the part of plaintiff, for judgment on a verdict rendered at the New York Circuit on January 4, 1888, and upon the part of defendant to set aside the verdict, the exceptions having been ordered to be heard in the first instance at General Term.

The action was brought for the wrongful seizure under execution of certain personal property.

*Blumenstiel & Hirsch,* for the appellant.

*J. L. Bennett,* for the respondent.

VAN BRUNT, P. J.:

On the 24th of June, 1886, one Conrad W. Wennberg was the owner and in possession of a stock of goods at his store 34 Green street, New York. At that time two suits, brought against him by James Chambers, founded upon promissory notes, were pending in the City Court of New York. A defense had been interposed by Wennberg in each case, and they had been placed on the short cause calendar for June 25, 1886. On said twenty-fourth of June a general assignment by said Wennberg to the plaintiff for the benefit of creditors, in the usual form and with the assent of the plaintiff, embraced therein in writing, was prepared by Wennberg's attorney; and such instrument was on that day at the attorney's office first subscribed and acknowledged by the plaintiff, Wennberg not being present at the time, and later, but on the same day, by Wennberg the assignor. After Wennberg had signed and acknowledged the instrument he left it with the attorney, no instructions or authority having been given to do anything with it except to hold it. According to Wennberg's testimony, he had had the instrument prepared

for use if he found himself unable to continue business, and was told it would not take effect until he delivered it. On said twenty-fourth of June he had not decided whether he would deliver it or not, and thereupon the plaintiff authorized the attorney to receive it for him as his agent if Wennberg decided to deliver it.

The cases pending in the City Court were adjourned to July second, and Wennberg had not in the meantime decided whether he would deliver the assignment. On the second of July the cases were tried and a verdict rendered in favor of the plaintiff in those cases and the defendant in this action. On the following morning Wennberg went to his attorney, received from him the assignment, and then and there delivered it to said attorney as agent for the plaintiff. It was recorded immediately, and the assignee took actual possession of the property as soon as he could do so. Execution having been issued to the sheriff upon the judgment obtained in the City Court, and the sheriff being indemnified upon said execution, seized the property embraced in the assignment, and this action was brought for said wrongful taking against the sheriff, and the defendants, being the indemnitors of the latter, were substituted as defendants.

Upon this state of facts the court directed a verdict in favor of the plaintiff, and the jury duly assessed the damages sustained by the alleged trespass of the sheriff. The question presented is, as to whether any valid transfer to the plaintiff had been made of the property in question by the assignment of June 24, 1888. It is urged, upon the part of the plaintiff, that the assignment was valid, because there had been no delivery until the third of July, and that until such delivery took place the title did not pass to the property mentioned therein, and it was wholly inoperative. If this position can be sustained, then, clearly, the direction of the court was right. But we think, however, that in this proposition certain peculiar features of the assignment law are entirely overlooked and their force misapprehended. There is no doubt but that, under ordinary circumstances, two parties may execute an instrument and place it in *escrow*, to be delivered upon a future contingency, and that it does not become operative until such contingency arises and such delivery takes place. It is also an undoubted fact that delivery, in all cases, is essential to the due execution of any instrument. The mere sig-

nature and acknowledgment of any instrument does not complete its execution. But such signature and acknowledgment must be followed by delivery in order that the instrument shall become operative. It is also true that, in the case of an assignment for the benefit of creditors, there must be a delivery of the instrument to the assignee, and the acceptance of the trust by the assignee before the title to the property proposed to be assigned passes. And it was in view of these circumstances that the legislature saw fit to amend the act of 1860 in a very significant manner in reference to the acceptance by the assignee of the trust reposed in him by the assignment. Under the law, before 1877, the assignee did not execute the assignment or any acceptance of the trust contained therein, and, consequently, it was necessary to give proof of acceptance by parol. It was thus a matter of uncertainty, dependent upon the evidence of, perhaps, parties interested in the issue as to when the assignment took place; in other words, when it was delivered to the assignee so that the title to the property embraced therein passed. And in order to prevent any uncertainty as to the time at which the transfer of the property took place, the assignment law was amended in 1877 whereby it was required that the assent of the assignee, subscribed and acknowledged by him, should appear in writing embraced in or at the end of or indorsed upon the assignment before the same was recorded. The legislature thereby intended to fix the time as to when the assignment went into effect, namely, at the time when the assignee accepted the trust which had been reposed in him.

The provision of the law is that the assignment should be recorded. Of course it could not be recorded unsigned, but the whole tenor of the decisions is, that it shall be recorded as soon as possible after execution; and that any withholding of the assignment from the record purposely for any purpose whatever is a violation of the law and invalidates the whole instrument. This being the condition of the law, it may be very well argued that the proposed assignee could not execute or signify his assent, according to the statute, to the proposed assignment, before it became an assignment, because the provision of the statute is that the assent of the assignee shall appear in writing, embraced in or at the end of or indorsed upon the assignment; and it is not in any sense an assignment until it is executed by the assignor. It is no answer to this suggestion to say that the pro-

posed assignee might assent to the proposed assignment. That is not the statute. The statute is that his assent shall be embraced in or at the end of or indorsed upon the assignment. And from the position of the provision in the act relating to the execution and recording of assignments it is apparent that the assent must be indorsed upon a completed instrument as far as the assignee is concerned. And if the instrument has been completed it has been delivered to the assignee, and his assent is indorsed upon an instrument which has been delivered to him and over which he has control.

But if the act does not bear this construction, it is apparent that when the two parties had completed their signatures and acknowledgment of the instrument, it was a completed instrument, the delivery of which had taken place by operation of law, for the reason that if the assignee, by executing the assignment, as he did, was signifying his assent to a proposed trust, the moment the assignor executed the instrument, the trust was created and the assignment became complete. And it is to be observed that the attorney who held this paper during all this time, while he was holding the paper as attorney for Wennberg, when he desires to use it, he is the attorney for the assignee. And there is no more familiar principle relating to the execution of instruments, that neither the grantee nor his agent can hold such an instrument in escrow, but that a delivery to the grantee or his agent is a complete execution of the instrument, and it cannot be held by him subject to the further action of the grantor. Taking all these circumstances into consideration, it appears, conclusively, in the first place, that the assignment was not executed as provided by the statute. And, in the second place, that when it was executed by both of the parties, it was a complete instrument, requiring no further action, and became operative by the very force of the statute. And, in the third place, the attempt of the attorney to hold the assignment for Wennberg, and receive it for the assignee, was the placing of the assignment virtually in escrow, in the hands of the agent of the grantee. It is clear, therefore, that it was an attempt to circumvent the provisions of the statute. It was intended to have this assignment in a condition to be used immediately, without any action upon the part of the assignee. It was intended that the execution of the assignment and the assent of the assignee

should relate back to the twenty-fourth of June; and it was intended, upon the part of the assignor, that, although this assignment had been placed out of his control, and in the hands of the agent of the assignee, and, therefore, virtually of the assignee, he should have the power to revoke it if he should find it necessary so to do. All these circumstances show that it was an attempt to circumvent the statute, to prevent that certainty in reference to the passing of the title which the statute required, and to have the power of recalling the assignment after it had been delivered, all of which constituted a fraud upon the creditors and necessarily rendered the assignment void.

It would appear, therefore, that the exception to the direction was well taken, and that such exception must be sustained and a new trial ordered, with costs to appellant, to abide event.

Daniels and Bartlett, JJ., concurred.

New trial ordered, with costs to the appellant, to abide event.